UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

NAJEE SHARIF WILKINS,

                Petitioner,                Case No. 2:20-cv-42

v.                                  Honorable Paul L. Maloney

CONNIE HORTON,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Najee Sharif Wilkins is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  Following an eight-day jury trial in the Kent County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317, and perjury, in violation of Mich. Comp. Laws § 767A.9.  On March 3, 2016, the court sentenced Petitioner to respective prison terms of 45 to 100 years and 10 to 40 years.

On March 31, 2020, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner placed his petition in the prison mailing system on March 31, 2020.  (Pet., ECF No. 1, PageID.27.)

The petition raises twelve grounds for relief, as follows:

I.     THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING SIM[I]LAR ACTS OF EVIDENCE UNDER MRE 404(B), SPECIFICALLY, EVIDENCE OF SO-CALLED WITNESS TAMPERING AND WITNESS INTIMIDATION AND IN SO DOING DENIED PETITIONER WILKINS HIS GUARANTEED FUNDAMENTAL DUE PROCESS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL[.]

II.    THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING WITNESS A.D. CHRISTIAN TO TESTIFY THAT HE HAD "HEARD" THAT THE VICTIM WAS INVOLVED IN A NEIGHBORHOOD FEUD[.]

III.   [PETITIONER] WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT OF CONFRONTATION BY THE ADMISSION OF THE PRELIMINARY EXAMINATION TESTIMONY OF RODNEY LEWIS AND CONSEQUENTLY WAS DENIED HIS FOURTEEENTH AMENDMENT RIGHT TO A FAIR TRIAL[.]

IV.    [PETITIONER] WAS DENIED A FUNDAMENTALLY FAIR TRIAL BY IMPROPER VOUCHING BY PROSECUTOR DURING CLOSING

ARGUMENT AND BY TESTIMONY OF THE LEAD DETECTIVE AS TO WHETHER RODNEY LEWIS AND BILLY WAYNE WELCH HAD BEEN CHARGED WITH PERJURY UNDER THE SIXTH AND FOURTEENTH AMENDMENTS[.]

V.      [PETITIONER'S] DUE PROCESS RIGHT TO A FAIR TRIAL AND HIS RIGHT TO CONFRONTATION WERE VIOLATED BY PROSECUTION MISCONDUCT FOR ASKING THE TRIAL COURT TO PERMIT ONE OF THE DETECTIVES TO TESTIFY THAT THE OTHER WITNESSES HAD REFUSED TO TESTIFY AND THEN ASKED THE DETECTIVE WHETHER OTHER WITNESSES HAD BEEN CHARGED WITH PERJURY AND THE TRIAL COURT COMMITTED OUTCOME DETERMINATIVE ERROR IN PERMITTING THIS TESTIMONY[.]

VI.     TRIAL COURT ERRED IN REFUSING TO GIVE AN INSTRUCTION ON MANSLAUGHTER, EVEN THOUGH THERE WAS EVIDENCE THAT THE VICTIM "SWUNG" AT DEFENDANT BEFORE THE VICTIM WAS KILLED[.]

VII.    [PETITIONER] IS ENTITLED TO RE-SENTENCING BECAUSE MINIMUM TERM WAS AN UNREASONABLE AND DISPROPORTIONATE UPWARD DEPARTURE FROM THE RE[]COMMENDED GUIDELINES RANGE[.]

VIII.   [PETITIONER] WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW, IN VIOLATION OF THE STATE AND UNITED STATES CONSTITUTIONS WHERE THE EVIDENCE WAS INSUFFICIENT BUT THE CONVICTION WAS NEVER THE LESS OBTAINED AS A RESULT OF CONSTITUT[ION]ALLY INFIRM AND INADMISSABLE EVIDENCE, DENIAL OF CONFRONTATION, CROSS-EXAMINATION, PROSECUTORIAL MISCONDUCT AND INSUFFICIENT JURY INSTRUCTION[.]

IX.     [PETITIONER] WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS, DUE PROCESS AND EQUAL PROTECTION OF THE LAW WHERE THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT, DENYING [PETITIONER] A FAIR AND IMPARTIAL TRIAL[.]

X.      [PETITIONER] WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, EQUAL PROTECTION OF LAW WHERE THE TRIAL JUDGE GAVE AN INSUFFICIENT JURY INSTRUCTION[.]

XI.     [PETITIONER] WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS, EQUAL

PROTECTION OF THE LAW[, AND] EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHERE THE TRIAL COURT ERRONEOUSLY MISCALCULATED [PETITIONER'S] OV GUIDELINES SCORES, AND THE MISCAL[C]ULATION WAS NOT SUPPORTED BY THE FACTS OF THE CASE AS REQUIRED BY LAW[.]

XII.    [PETITIONER] WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EQUAL PROTECTION, DUE PROCESS OF LAW, AND EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENT[S] OF THE UNITED STATES CONSTITUTION[] AND MICHIGAN CONSTITUTION 1963 ARTICLE 1, § 17.20[.]

(Br. in Supp. of Pet., ECF No. 4, PageID.64, 71, 75, 79, 83, 88, 94, 98, 101, 112, 115, 119.)

The facts underlying Petitioner's convictions were thoroughly detailed in the 25-page unpublished opinion of the Michigan Court of Appeals:

On November 25, 2008, 17-year-old Khiry Walker died from a gunshot wound to the head. The fatal shot was fired from behind, shortly after 7:00 p.m., while Walker was in the Martin Luther King park in Grand Rapids, Michigan. An autopsy was performed the next day and three lead fragments consistent with a .22 caliber bullet were recovered. The park was covered in snow at the time and the police were unable to locate any ballistics evidence during their initial search. However, when the snow melted in February 2009, the police returned and discovered two .22 caliber casings near the location where Walker's body was found.

The investigation was hindered from its early stages owing in large part to a lack of cooperation from witnesses who might have had knowledge concerning Walker's death. From the few people that were willing to speak about the shooting, the police learned that Walker and his friends had been engaged in an ongoing feud with another group of local teenagers. Although the witnesses carefully avoided placing labels on the nature of these groups, the parties stipulated at trial that defendant and Walker were associated with rival street gangs, loosely referred to as "Alto" and "Benjamin" based on the streets where their members lived or spent time. The Benjamin gang included Walker, Domenque Garmon, and Ravonte Chapman. Defendant, Dareyon York, Vondell Davis, Avery Ford, and Billy Wayne Welch were identified as members of Alto. Detective Matthew Kubiak obtained investigative subpoenas for each of the Alto members in 2009 and elicited sworn testimony concerning Walker's death. In pertinent part, defendant testified that he was at York's house on the evening of November 25, 2008, and did not have any information concerning the shooting. Years later, Detective Kubiak received information that ultimately lead the prosecutor to charge Ford, York, Davis, and defendant with perjury in connection with their investigative subpoena testimony.

4

In the wake of the perjury charges, Ford and York recanted their previous testimony and implicated defendant in Walker's murder.

At trial, Walker's family and friends established that he took the bus to Benjamin Street on the night of his death, intending to go to Garmon's house. York testified that he agreed to meet defendant at the bus stop near the southwest corner of the park on the night of the shooting to confront Walker. When Walker disembarked from the bus, he saw defendant, "threw a little punch," and then ran toward the park. According to York, defendant pursued Walker with a .22 caliber Ruger in hand and fired two shots at the ground while yelling for Walker to stop. Walker continued to run and defendant shot in his direction twice more. York did not see Walker fall to the ground, but recalled that defendant got very upset and kept saying, "He fell." Relevant cell phone records introduced at trial were consistent with York's explanation of the events surrounding Walker's death.

Arthur Brown also corroborated much of York's testimony. Brown was driving through the neighborhood at the time of the shooting when he saw two people chasing a young man, heading in the direction of the park pool. He recognized the two pursuers as defendant and York and indicated that they were both armed, though only defendant fired at Walker. Brown also testified about a conversation he had with defendant several weeks later in which defendant said, "[H]e just had a beef with the young man. He did what he had to do." Defendant said that he "laid [Walker] down," which Brown understood to mean that defendant took Walker's life. Several other witnesses described the ongoing feud between the Alto and Benjamin gangs and defendant's possession of a .22 caliber handgun around the time of the shooting. Others reported conversations with defendant in which he tacitly acknowledged his responsibility for Walker's death.

Of particular importance to this appeal, the prosecutor also presented extensive evidence showing that defendant and his brother, Cortez Wilkins, had threatened several witnesses or otherwise interfered with their testimony. For instance, after York was charged with perjury, Cortez visited him in jail at defendant's request and advised him to "stay strong" and "take the Fifth." At trial, York confirmed that Cortez was insinuating he should continue to lie for defendant, as Cortez was aware that York's earlier testimony was untrue. York also recalled that when he talked to defendant about the investigative subpoenas in 2009, defendant said he knew people that could harm York's family. Brown did not detail the threats or intimidation he had experienced, but stated that he had been "harmed" and placed in protective custody in connection with the case. The prosecutor introduced recorded phone calls and jail visits evidencing attempts to interfere with witness testimony, as well as two letters defendant penned to Cortez, one of which read, in pertinent part:

> What's happening, Big Bro. Well, to start you know that N***a can't make it to no trial. You'll be off parole about time that comes about. But it might not have to go to that extent. A few threats to the family such as Tony, his BM, kids, et cetera. If it was vice versa, I would make it clear

that he either switch his story or ain't no limits.  Somebody getting touched.  Just be extra careful how you do things, and do your dirt all on your lonely.  Trust no one.  Try to get in touch with my Bro, Antwan on that tip.  Shooter for real.

\* \* \*

. . . And you know a couple dollars to some young n\*\*\*\*s to spray up a n\*\*\*a residence can scare a n\*\*\*a straight.  They doing that s\*\*t for free out there.  Ask Precious about that 61st District website, and you can get addresses to anyone.  Anyways, make sure you stay on point with them Diplomat n\*\*\*\*s.  Keep them sayin' and keep supporting them.  What we about to put in motion gonna be for the lawyers.

Unsurprisingly, several witnesses were extremely hesitant to testify and agreed to do so with reluctance, while Billy Wayne Welch and Rodney Lewis unequivocally refused to testify at all.

*People v. Wilkins*, No. 332470, 2017 WL 4158023, at \*1-2 (Mich. Ct. App. Sept. 19, 2017).  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).[1]

After eight days of trial, the jury found Petitioner not guilty of first-degree premeditated murder, but guilty of second-degree murder and perjury.  Petitioner was sentenced on March 3, 2016.

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, collectively raising in the brief filed by counsel and his pro per supplemental brief[2] the same twelve grounds he presents in his habeas application.  The court of appeals rejected all

---

[1] Petitioner makes no challenge to the evidence recited by the court of appeals.  Indeed, Petitioner's brief contains a description of the testimony and evidence that is not inconsistent with the court of appeals' summary.  This Court therefore accepts as true the facts found by the court of appeals.  *See* 28 U.S.C. § 2254(e)(1) (presumption of correctness is accorded state-court findings of fact, which must be overcome by clear and convincing evidence); *Sumner v. Mata*, 449 U.S. 539, 546 (1981) (presumption of correctness applies to appellate-court findings); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989) (same).

[2] Under Mich. Administrative Order No. 2004-6, "[w]hen a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona."  *Id.*  The rule also requires defendant's appellate counsel to provide procedural advice and clerical assistance to the defendant in preparing the supplemental brief.  The brief must be filed within 84 days of the appellant's original brief filed by counsel.

appellate grounds and affirmed the convictions and sentences on September 19, 2017.  Petitioner

sought leave to appeal to the Michigan Supreme Court, raising the same twelve issues presented

to the court of appeals.  The supreme court denied leave to appeal on July 27, 2018, because it was

not persuaded that the questions presented should be reviewed by the court.  The supreme court

denied reconsideration on October 30, 2018.

Petitioner filed a petition for writ of certiorari to the United States Supreme Court.

The Supreme Court denied the writ on April 16, 2019.  (Pet., ECF No. 1, PageID.7.)  Petitioner

timely filed his habeas petition on March 31, 2020, by placing it in the prison mailing system.  (*Id.*,

PageID.27.)

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'"

and ensures that state court convictions are given effect to the extent possible under the law.  *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any

claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision

that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to

meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme

Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the

Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652,

7

655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Grounds I, II, & III:  Evidentiary Issues

In his first three grounds for habeas relief, Petitioner raises questions about evidence that was presented at his trial. In Ground I, he argues that the trial court erred in admitting evidence of witness tampering and intimidation, in violation of Petitioner's right to due process and a fair trial under the Sixth and Fourteenth Amendments. In Ground II, Petitioner contends that the trial court abused its discretion in allowing witness A.D. Christian to testify that he "heard" that Petitioner was involved in a neighborhood feud, in violation of Petitioner's right to due process. In Ground III, Petitioner asserts that he was denied his rights under the Confrontation Clause of the Sixth Amendment by the admission of the preliminary examination testimony of Rodney Lewis.

#### A.    Witness tampering and intimidation

Petitioner complains that the trial court erred in admitting evidence of witness tampering, in violation of Michigan Rule of Evidence 404(b). Petitioner contends that the evidence was improperly used to prove his character and to suggest that Petitioner acted in conformity with that character. Defense counsel objected to the admission of the evidence, but the trial court held that the evidence was relevant and not unfairly prejudicial.

The Michigan Court of Appeals thoroughly addressed the admissibility of the evidence under Mich. R. Evid. 404(b), concluding that the evidence was properly admitted for a

9

non-propensity purpose—"to show [Petitioner's] guilty state of mind and to corroborate the truthfulness of witnesses who were reluctant to testify." *Wilkins*, 2017 WL 4158023, at *3. The court also held that the evidence was highly relevant for the same two purposes and was not unfairly prejudicial. *Id.* The court therefore concluded that the evidence was properly admitted under Mich. R. Evid. 404(b). The Court did not address whether admission of the evidence violated due process. *Id.*

To the extent that Petitioner argues that the state court misapplied Mich. R. Evid. 404(b), his claim fails to state a cognizable issue on habeas review. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)); *see also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same). Therefore, this Court is bound by the Michigan Court of Appeals' application of Mich. R. Evid. 404(b).

Moreover, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.

2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  This approach accords the state courts wide latitude in ruling on evidentiary matters.  *Seymour*, 224 F.3d at 552 (6th Cir. 2000).  Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).

Petitioner has not met this difficult standard.  There exists no clearly established Supreme Court precedent holding that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to reach the question of whether the admission of prior acts evidence violated due process.  502 U.S. at 75.  The *Estelle* Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512.

Because the Supreme Court has never found that the admission of evidence of other bad acts violates due process, the state court's decision was "far from" an unreasonable

determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502

(6th Cir. 2001); *see also Bugh*, 329 F.3d at 512. Petitioner therefore is not entitled to relief on his

first habeas ground.

> **B.    Admission of hearsay testimony by witness Christian**

Petitioner asserts that the trial court improperly allowed witness A.D. Christian to

testify that he "heard" about the neighborhood feud between the Benjamin and Alto gangs or

groups. Petitioner contends that the statement should have been stricken as inadmissible hearsay.

The Michigan Court of Appeals found that Christian subsequently explained that

his knowledge was based both on what others had told him and on what he had personally

observed. As a result, the court of appeals held, reasonable people could disagree about whether

the testimony was based on hearsay, so the trial court's decision to admit the evidence was not

clearly erroneous. In addition, the court reasoned, even if the complained-of testimony was

hearsay, it was harmless, in light of the testimony from multiple witnesses with personal

knowledge about the series of altercations between the two gangs, beginning in 2006. *Wilkins*,

2017 WL 4158023, at \*4.

As previously discussed, the court of appeals' determination that the evidence was

properly admitted under the state hearsay rule is binding on this Court. *Stumpf*, 722 F.3d at 746 n.6

(quoting *Bradshaw*, 546 U.S. at 76). Moreover, Petitioner has not demonstrated that the admission

of Christian's statement violated a federal constitutional right.

Although in some circumstances, the Confrontation Clause may be implicated by

the admission of hearsay testimony, *see Bugh*, 329 F.3d at 506 (discussing *Maryland v. Craig*, 497

U.S. 836, 846 (1990); *Idaho v. Wright*, 497 U.S. 805, 817-23 (1990); *United States v. Owens*, 484

U.S. 554 (1988); and *Ohio v. Roberts*, 448 U.S. 56, 65 (1980)), the Supreme Court has never

recognized that the constitution is violated by the admission of unreliable hearsay evidence. *Desai*

12

*v. Booker*, 732 F.3d 628, 630-31 (6th Cir. 2013). Instead, the Supreme Court has merely "h[e]ld out the possibility that 'the introduction' of 'evidence' in general could be 'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* at 631 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Such a standard is highly general. "'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations,'— and, it follows, the less likely a state court's application of the rule will be unreasonable." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where, as here, a state court reasonably rejects a rule urged by the claimant but yet to be adopted by the Supreme Court, it does not unreasonably apply established federal law." *Id.* at 632 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). Accordingly, Petitioner is not entitled to relief on Ground II of his petition.

### C.     Violation of Confrontation Clause

Petitioner argues in his third habeas ground that the trial court improperly admitted the preliminary examination testimony of Rodney Lewis. He argues, as he did in the Michigan appellate courts, that the admission of Lewis' preliminary-examination testimony violated Michigan Rule of Evidence 804 and the Confrontation Clause.

The Michigan Court of Appeals thoroughly addressed Petitioner's claim, finding that the testimony was properly admitted under Mich. R. Evid. 804(b)(1), because Lewis was unavailable within the meaning of Mich. R. Evid. 804(a). In addition, the court held that Petitioner had not preserved his claim that he was denied his rights under the Confrontation Clause, because his trial objection had been solely directed to the violation of the hearsay rule.[3]   Nevertheless,

---

[3] "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention— whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). Petitioner's confrontation claim appears to be procedurally defaulted because he failed to raise the issue in the trial court. It is clear that the contemporaneous objection rule was well-established at the time of Petitioner's trial. *See, e.g.*, *People v. Carines*, 597 N.W.2d 130, 139 (Mich. 1999); *People v. Stanaway*, 521 N.W.2d 557, 579 (Mich. 1994) (citing cases); *People v. Kelly*, 378 N.W.2d 365, 369-70 (Mich. 1985). As a result,

applying plain-error review, the court concluded that Petitioner's confrontation claim was

meritless.

> MRE 804 provides a number of hearsay exceptions that are only applicable if the declarant is unavailable. For instance, "MRE 804(b)(1) excepts from the rule against hearsay a witness's prior testimony given under oath and subject to cross-examination by the opposing party if . . . the witness is unavailable to testify . . . ."[25] A declarant is considered unavailable if he "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so . . . ."[26]

> At the outset of the fifth day of trial, the prosecutor learned that Lewis was no longer willing to participate in the trial. Outside of the jury's presence, the court explained to Lewis that he had been subpoenaed to testify and asked if he was willing to take the stand. Lewis unequivocally refused to be sworn, saying: "No, man, I been gettin' threats that I'm going to be max'd out if I don't testify. I'm straight, man. Nope. I'm to the - - I'm tellin' the prosecutor and the detective, I'm gone, man. I ain't gotta testify. Nope. Straight." Given his adamant refusal, the trial court properly concluded that Lewis was unavailable under MRE 804(a)(2).

> Defendant cites this statement as evidence that Lewis was not unavailable because his refusal to testify was prompted by threats from the prosecutor. Although Lewis's statement is admittedly ambiguous, defendant's argument rests on an illogical interpretation. Why would Lewis take the very action, i.e., refusing to testify, that would supposedly result in negative repercussions? Moreover, the record suggests that the threats Lewis referred to were more likely instigated by defendant, rather than the prosecutor. Lewis's recalcitrance arose after the court learned that defendant had been pressuring another witness in the courthouse holding cell during the trial. Additionally, the prosecutor had previously received permission to introduce evidence that defendant fired a gun at Lewis in 2009 after learning that Lewis was cooperating with the police investigation.[27]

> Defendant also argues that Lewis's former testimony was inadmissible because defense counsel's cross-examination of Lewis was inadequate owing to the fact that

---

in order to be excused from his procedural default, Petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.

Nevertheless, the Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court will skip the procedural-default analysis. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

a substantial portion of the discovery materials were not available to defense counsel at the time of the preliminary examination. Former testimony of an unavailable witness is admissible if it was taken at "another hearing" and the party against whom it is offered had an "opportunity and similar motive to develop the testimony."[28] Additionally, the testimony of an unavailable witness who was subject to cross-examination at the time of the former testimony generally comports with the constitutional protection afforded by the Confrontation Clause.[29] It is undisputed that Lewis's prior testimony was taken at "another hearing," and that defense counsel cross-examined Lewis at the time. In reviewing the adequacy of the opposing party's opportunity and motive to develop former testimony, this Court considers:

> (1) whether the party opposing the testimony "had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue"; (2) the nature of the two proceedings-both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities).[30]

Here, Lewis's former testimony was taken at defendant's preliminary examination, the purpose of which was to determine whether there was probable cause to believe that Walker had been murdered and that defendant was the person who killed him.[31] To justify binding defendant over for trial, the prosecutor was only required to present enough evidence concerning each element of the charged offenses to lead "a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of [defendant's] guilt."[32] Thus, the prosecution's burden of proof at the preliminary examination was lower than its burden at trial, where it was obligated to prove every element of the charged offenses beyond a reasonable doubt.[33]

Nonetheless, the focus of the inquiry concerning the adequacy of previous cross-examination is highly fact-sensitive,[34] such that the differing burdens of proof involved in these proceedings are not dispositive. Importantly, defense counsel employed the same strategy at the preliminary examination as he did at trial, i.e., casting doubt on the credibility of the prosecution's witnesses and emphasizing the inconsistencies among their stories.[35] To that end, defense counsel elicited testimony from Lewis admitting that he hoped to "get something" for testifying against defendant. Defense counsel also propounded questions that forced Lewis to reiterate the areas of his testimony that conflicted with other evidence. Defendant's reliance on the mere fact that defense counsel did not have all the discovery materials at the time of the preliminary examination is unpersuasive because the same is true of nearly every criminal prosecution during the early stages of the case, and courts have routinely upheld the admissibility of preliminary examination testimony at subsequent trials.[36] Although the timing of the preliminary examination could interfere with a defendant's right to cross-examine a witness in some circumstances, defendant's cross-examination of Lewis in this case was adequate. Moreover, for the reasons set forth in Section IV of this opinion,

defendant forfeited the protection of the Confrontation Clause as it relates to Lewis by intimidating him into silence.

In any event, defendant cannot demonstrate that Lewis's prior testimony affected his substantial rights or the outcome of the trial.  Defendant contends that if defense counsel had more information at the time of the preliminary examination, he would have questioned Lewis further about his contention that Davis was present at the shooting, as this assertion was contrary to the testimony of the only two eyewitnesses.   However, York and Brown both testified at the preliminary examination before Lewis took the stand, and both indicated that defendant and York were the only people to confront Walker before the shooting.  Thus, defense counsel was equipped with the information to pursue this line of inquiry and did, in fact, question Lewis about Davis's purported presence.   Furthermore, defense counsel was still able to present the inconsistencies between Lewis's testimony and other evidence to the jury during closing arguments.

[25] *People v Lopez*, 316 Mich App 704, 714; 892 NW2d 493 (2016).

[26] *People v Adams*, 233 Mich App 652, 656; 592 NW2d 794 (1999), quoting MRE 804(a)(2).

[27] Evidence of the 2009 shooting was not actually introduced at trial.

[28] *People v Farquharson*, 274 Mich App 268, 272, 275; 731 NW2d 797 (2007).

[29] *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009).

[30] *Farquharson*, 274 Mich App at 278.

[31] See *People v Perkins*, 468 Mich 448, 452; 662 NW2d 727 (2003) ("The purpose of a preliminary examination is to determine whether there is probable cause to believe that a crime was committed and whether there is probable cause to believe that the defendant committed it.").

[32] *Id.* (citation omitted).

[33] *People v Green*, 310 Mich App 249, 255; 871 NW2d 888 (2015).

[34] *Farquharson*, 274 Mich App at 278.

[35] At the preliminary examination, defense counsel argued,

> [Y]ou've heard four different stories from four different people, and none of them match. Not even close.

> Basically the only thing that the four people have said is that Mr. Wilkins is the one that shot Khiry.  Other than that all of the details, everything varies from one to the other, and every one of them was testifying under a promise of leniency for their testimony.

Defense counsel's closing argument at trial reflected the same strategy.

[36] See, e.g., *Adams*, 233 Mich App 652 (rejecting challenge to the admissibility of preliminary examination testimony on hearsay and constitutional grounds); *Crawford v Washington*, 541 US 36,

57-58; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (approving of cases in which testimony from
preliminary proceedings was admitted at trial).

*Wilkins*, 2017 WL 4158023, at *5-6.

        The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., amend. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Maryland v. Craig*, 497 U.S. 836, 845 (1990).  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

        The Sixth Circuit has noted that there exists "some question whether a preliminary hearing *necessarily* offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes."  *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-38 (6th Cir. 2010) (emphasis added) (citing, *inter alia, Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007) (doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-Crawford understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination") (internal quotation marks omitted)).  But the Supreme Court has never held that a defendant is denied his rights under the Confrontation Clause when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony.  *Id.* at 438.  As a result, in the context of a federal court sitting on habeas review, the Sixth Circuit has concluded that a state court's determination that testimony from the preliminary examination was properly admitted was not an unreasonable application of clearly established Supreme Court precedent.  *Id.*

at 438-40; *see also Williams v. Bauman*, 759 F.3d 630, 636 (6th Cir. 2014) (citing *Al-Timimi* with approval and upholding on habeas review the admission of testimony from the petitioner's own preliminary-examination hearing).

Here, the court of appeals expressly applied the *Crawford* standard, concluding that Petitioner both had ample opportunity to cross-examine Lewis at the preliminary examination and exercised that opportunity. The court further upheld the determination that Lewis was unavailable at trial, given that Lewis refused to testify because he had been credibly threatened with physical harm or death if he did. Petitioner does not challenge the state court's factual findings, except to suggest that Lewis was physically present at the courthouse and therefore should not have been considered unavailable.

The court of appeals properly determined that a witness' unwillingness to testify out of fear rendered him unavailable. The Sixth Circuit has recognized that, when a witness refuses to testify at trial, that witness is unavailable for purposes of the Confrontation Clause. *Rice v. Marshall*, 709 F.2d 1100, 1101-02 (6th Cir. 1983) (citing *Douglas v. Alabama*, 380 U.S. 315 (1965)). Under the circumstances presented in the instant case, the finding that Lewis was unavailable at trial was patently reasonable. Due to threats made against him if he testified, Lewis refused to testify at trial, despite appearing at the courthouse, as required by the subpoena served on him. He therefore was unavailable, and his previously sworn preliminary examination testimony therefore was admissible.

The court of appeals offered yet another basis for permitting the use of Lewis' prior statement: Petitioner had forfeited his confrontation right by intimidating him into silence. The Supreme Court has recognized the longstanding principle of forfeiture where the defendant has, by wrongdoing, procured the witness' unavailability. *See Giles v. California*, 554 U.S. 353,

359-61 (2008) (upholding the constitutional basis of the traditional forfeiture rule, but only where the defendant engaged in conduct that was intended to prevent the witness from testifying).  As the *Giles* Court recognized, however, the forfeiture rule obviates the confrontation analysis entirely and is unnecessary where, as here, the unavailable witness previously testified under oath and subject to cross-examination.  *Id.* at 373.

Here, as the state court held, Petitioner's own recorded statements demonstrated his attempts to intimidate witnesses.  The court of appeals' determination that Petitioner had forfeited his confrontation rights by his conduct was supported by the evidence and fully consistent with *Giles*, 554 U.S. at 373.  As a result, the court of appeals' alternative determination was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

In sum, the Court concludes that the state courts reasonably applied clearly established Supreme Court precedent in admitting the preliminary examination testimony of Mr. Lewis.

## IV.      Ground IV:  Prosecutorial/Witness Misconduct

In Ground IV of his habeas application, Petitioner argues that the prosecutor, through the testimony of Detective Kubiak, impermissibly vouched for the credibility of the testimony of Rodney Lewis and Billy Wayne Welch.  He contends that permitting Kubiak to testify that neither witness had been charged with perjury amounted to an expression of Kubiak's (and the prosecutor's) opinion about the truthfulness of Lewis and Welch.  In addition, Petitioner asserts that, by commenting in closing arguments on the fact that some witnesses had been intimidated, the prosecutor implied that she had special knowledge of the witnesses' veracity.

To the extent that Petitioner argues that the witness committed misconduct by testifying that Lewis and Welch had not been charged with perjury, he fails to identify a Supreme Court decision supporting the existence of a "witness misconduct" claim, and the Court is aware

19

of no such decision.  Instead, the issue presented by Detective Kubiak's testimony is whether the prosecutor committed misconduct by eliciting that testimony, thereby denying Petitioner a fair trial.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the

20

state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

In addressing Petitioner's claim, the Michigan Court of Appeals first held that, because the defense had not lodged a contemporaneous objection, the issue would be reviewed solely for plain error.  As previously discussed, the requirement of a contemporaneous objection is a well-established and regularly applied procedural rule in Michigan.  Petitioner's claim therefore is procedurally defaulted.  *See Carines*, 597 N.W.2d at 139; *Stanaway*, 521 N.W.2d at 579; *Kelly*, 378 N.W.2d at 369-70.  Under the circumstances of the case, however, the Court will skip the procedural default analysis and proceed to the merits.  *See Hudson*, 351 F.3d at 215-16; *Binder*, 198 F.3d at 178.

The court of appeals reviewed the issue for plain error, as follows:

> Determinations regarding witness credibility are within the sole province of the jury.[40]  Consequently, it is improper for a witness to comment or opine on the truthfulness of another witness.[41]  Defendant contends that Detective Kubiak improperly vouched for Lewis's and Welch's credibility by testifying that neither witness had been charged with perjury.  We disagree.  Detective Kubiak's testimony reported facts, rather than his personal opinion regarding the credibility of the absent witnesses.  That neither witness had been charged with perjury only demonstrates that the police did not have a reason to believe they provided false testimony under oath.  In other words, the absence of a perjury charge is not the equivalent of confirmation that a witness testified truthfully.

> Even if we construed Detective Kubiak's testimony in the manner urged by defendant, there is no reason to believe that it actually prejudiced defendant.  Welch did not testify at trial.  As such, his credibility was of no importance.  Although Lewis's preliminary examination testimony was read to the jury, there was not a significant risk that the jury would give that testimony undue weight.  The testimony was extremely brief, consisting of only 12 transcript pages, and the most damaging aspects related to defendant's admission regarding his involvement in Walker's death and defendant's possession of a gun that may have been used in the shooting.  But several other witnesses recounted the instances in which defendant discussed Walker's death or recalled seeing defendant with a gun of the same caliber that was used in the shooting.  Thus, it is improbable that defendant was

21

unfairly prejudiced by Lewis's cumulative testimony, regardless of whether Detective Kubiak's testimony improperly enhanced Lewis's credibility.

Defendant also contends that the prosecutor vouched for the credibility of her witnesses by repeatedly commenting about witnesses who had been intimidated or refused to testify. According to defendant, these comments effectively implied that the prosecutor had special knowledge that the witnesses who testified were truthful. In reviewing claims of prosecutorial misconduct, this Court must consider the prosecutor's remarks in context, considering the relationship they bear to the evidence and the arguments advanced by the defense.[42] Although the prosecution is not permitted to vouch for the credibility of a witness by implying that it is privy to special information concerning the witness's veracity, the prosecution is free to argue the evidence presented and all reasonable inferences that can be derived from the evidence, including inferences regarding witness credibility.[43]

In her closing arguments, the prosecutor frequently referred to witnesses who had been intimidated or threatened in connection with the investigation or prosecution of the case. However, there was ample evidence of witness tampering presented at trial and the prosecutor fairly made use of that evidence in closing arguments. In fact, having reviewed the prosecutor's closing arguments in context, we consider only one comment noteworthy. The prosecutor reminded the jury that it should treat Lewis's preliminary examination testimony as though it had been presented live at trial because "he was under oath at the time, and was subject to cross-examination, just like he would be here." She then added, "And [Lewis] testified truthfully. Okay?" The prosecutor's failure to tie this assertion to the evidence and related inferences, as she had otherwise done throughout her closing argument, leaves open the possibility that she was improperly vouching for witness credibility. However, this single instance of prosecutorial error was not so flagrantly prejudicial that it was incapable of being rectified with an appropriate curative instruction. Because the prosecutor's statement went unchallenged and no instruction was requested, this Court will not find error requiring reversal arising from the prosecutor's comment.[44] Furthermore, given the limited value of Lewis's testimony to the state's case, it is improbable that the prosecutor's comment affected the outcome of the proceedings in the manner required to avoid issue forfeiture under the plain error rule.[45]

[40] *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013).

[41] *Id.* at 349.

[42] *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003).

[43] *People v Thomas*, 260 Mich App 450, 454-455; 678 NW2d 631 (2004).

[44] *Bennett*, 290 Mich App at 476.

[45] *Pipes*, 475 Mich at 274.

*Wilkins*, 2017 WL 4158023, at *7-8.

Petitioner does not dispute any fact found by the court of appeals, respecting either the scope of the prosecutorial and witness remarks or the content of the other evidence against Petitioner. As a consequence, the court's factual findings must be accepted as true. *See* 28 U.S.C. § 2254(e)(1) (presumption of correctness is accorded state-court findings of fact, which must be overcome by clear and convincing evidence); *Sumner*, 449 U.S. at 546 (presumption of correctness applies to appellate-court findings); *Smith*, 888 F.2d at 407 n.4.

The question, therefore, is whether the court of appeals improperly applied the constitutional standard to those facts. The federal courts have generally recognized two types of objectionable vouching that may amount to prosecutorial misconduct. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).[4] The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). In the second type of impermissible vouching, also known as bolstering, the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the

---

[4] The Court observes that, notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328-29 (citing *Johnson*, 525 F.2d at 482), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct. Given the Supreme Court's recent admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation. *See Parker*, 567 U.S. at 49 ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here."); *see also Lopez*, 574 U.S. at 7 (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)); *White*, 572 U.S. at 425-27 (same).

prosecutor's belief in the defendant's guilt.  *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

The Sixth Circuit has recognized that a prosecutor may, under some circumstances, engage in bolstering by eliciting testimony from one witness about the credibility of another witness.  *See, e.g., United States v. Crawford*, 943 F.3d 297, 311-12 (6th Cir. 2019) (citing *Francis*, 170 F.3d at 551 (finding that, by eliciting such testimony, the prosecutor committed misconduct)).  However, even assuming that Kubiak's testimony that Lewis and Welch had not been charged with perjury could be viewed as implicit vouching, Petitioner's claim does not meet the high standard to establish a due process violation through improper vouching for a witness.  As the court of appeals recognized, Welch did not even testify at trial, so it is impossible to conclude that his testimony was being bolstered by Kubiak's evidence.  And, as the court also found, little danger existed that the introduction of evidence that witness Lewis was not charged with perjury or had refused to appear would have an outsized impact on his credibility or on the outcome of trial, given the plenitude of evidence against Petitioner.  The court of appeals balanced the factors identified by the Supreme Court:  the limited nature of the potentially improper witness testimony; the fact that one of the two witnesses who allegedly had been bolstered did not even testify at trial; the overall strength of the case against Petitioner; and the lack of objection.  *Young*, 470 U.S. at 11-12; *Darden*, 477 U.S. at 181-82.  In light of the evidence, which Petitioner does not dispute, Petitioner fails to demonstrate any error in the court of appeals' determination, much less that that determination "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Parker*, 567 U.S. at 47 (internal quotations omitted).

24

Moreover, Petitioner does not attempt to demonstrate that the court of appeals misapplied the *Darden* standard in addressing Petitioner's claim that the prosecutor committed misconduct in arguing that witness Lewis testified truthfully.  The court of appeals concluded that the brief reference arguably could have amounted to improper vouching, but found that, considering its brevity, the error was not flagrantly prejudicial.

"The prosecution necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments."  *Wogenstahl*, 668 F.3d at 329 (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (internal quotation marks omitted)); *see also Clarke v. Warren*, 556 F. App'x 396, 408 (6th Cir. 2014).  The Sixth Circuit has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument.  *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001); *see also Stewart*, 867 F.3d 633 (holding that, despite some improper statements by the prosecutor, petitioner had not shown the evidence met the doubly deferential standard applied to review of state-court determination on prosecutorial misconduct) (citing *Parker*, 567 U.S. at 48).

Here the prosecutor's brief statement that Lewis testified truthfully falls short of creating fundamental unfairness that violates due process.  Under the circumstances in issue in the instant case, Petitioner has failed to overcome the double deference owed the state-court's denial of Petitioner's claim that prosecutorial misconduct deprived him of his right to due process.

## V.    Ground V:  Prosecutorial Misconduct/Confrontation

In Ground V, Petitioner argues, in part, that the prosecutor committed misconduct by introducing evidence that Lewis and Welch had been subpoenaed and refused to testify.  Petitioner also argues that the Kubiak's testimony about Lewis' and Welch's refusals to testify deprived him of his right to confront witnesses.  In addition, Plaintiff complains that the prosecutor's opening statement, which referenced the fact that Welch had cried when talking about

the murder, amounted to prosecutorial misconduct that deprived him of his right to confrontation. Finally, Petitioner argues that the prosecutor's remarks in closing about witness intimidation amounted to prosecutorial misconduct.

As with many of Petitioner's other issues, the Michigan Court of Appeals found that Petitioner had procedurally defaulted his claims about Lewis' and Welch's refusals to testify, because his objection below was made only to the evidence that Welch refused to testify, not to the evidence that Lewis refused to testify, and because even that objection was an evidentiary challenge, not a constitutional one. Again, this Court will skip the procedural default analysis and proceed to the merits. *See Hudson*, 351 F.3d at 215-16; *Binder*, 198 F.3d at 178.

Reviewing the claim for plain error, the Michigan Court of Appeals comprehensively analyzed the claims[5]:

> Next, defendant raises several issues arising from the manner in which the prosecutor addressed Welch's and Lewis's absence at trial. After it became apparent that Welch refused to testify at trial, the prosecutor asked that the jury be advised of his refusal, as she had referred to his anticipated testimony in her opening statement. Over defense counsel's objection, the court agreed that Detective Kubiak could testify that Welch was subpoenaed but refused to take the stand. When Detective Kubiak testified consistent with this ruling, the prosecutor elicited similar testimony regarding Lewis without objection from defense counsel. . . .
>
> Unique difficulties arise when a witness asserts the right to remain silent in the presence of the jury in a criminal trial. First, if the substance of the witness's past testimonial statement is still placed before the jury, the defendant's constitutional right of confrontation is implicated because the witness cannot be cross-examined regarding the privileged matters.[55] Second, in some circumstances, the inferences arising from the witness's invocation of a testimonial privilege in the jury's presence can unreasonably infringe upon the defendant's right to a fair trial.[56] . . .

---

[5] The Michigan Court of Appeals addressed a third issue in its opinion—whether the prosecutor's conduct violated the ethical rules governing professional attorney conduct. Petitioner does not raise the issue of attorney ethics in his habeas petition. Moreover, even had such an issue been raised, it would not be cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Compliance with ethical rules governing the profession and state licensing requirements does not rise to the level of a constitutional violation.

Here, although Lewis and Welch both refused to testify at trial, their refusals were addressed by the court outside of the jury's presence.  Nonetheless, the jury was made aware of this issue when Detective Kubiak testified that both men refused to comply with their subpoenas.  While it was not established that either witness had a valid testimonial privilege, defendant may still have been prejudiced by the negative inferences arising from their refusal to testify.[58]

With respect to the constitutional implications under the Confrontation Clause of the Sixth Amendment, defendant argues that his right of confrontation was violated when Detective Kubiak told the jury that Lewis and Welch refused to testify because his explanation was offered as substantive evidence that they had been intimidated.  Every criminal defendant has the right to be confronted with the witnesses against him, which "insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness."[59]  However, that right is subject to forfeiture:

> [W]hen defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce.  While defendants have no duty to assist the State in proving their guilt, they do have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system.  We reiterate what we said in Crawford: that "the rule of forfeiture by wrongdoing . . . extinguishes confrontation claims on essentially equitable grounds." . . . That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.[60]

Here, although not presented at trial, there was evidence that defendant shot a gun at Lewis in 2009 after learning that Lewis was cooperating with the police investigation.  Lewis's fear of testifying was also apparent at the preliminary examination, when he agreed that he was concerned for his safety.  Because it appears that Lewis was intimidated into silence, defendant forfeited his right to confront Lewis.

By contrast, it is not apparent from the record why Welch refused to testify.  Although his former statement was not technically received in evidence, the substance of his testimony was discussed by the prosecutor in her opening statement:

> Billy Wayne Welch broke down [at the investigative subpoena proceeding]. He cried.  This is -- this is a tough kid. He gets up and he cries because -- and then he says, "Najee was my boy. Najee's my boy.  I don't want to do this."  And then he told us everything.  About how the defendant had a .22.  About how the defendant talked about it.  About how he talked about how he and Dareyon chased him, and then Najee shot him and killed him and left him.  Saw him fall.

Other courts have construed similar summaries of a witness's statements to be the "equivalent . . . of testimony" that is not subject to cross-examination, contrary to the requirements of the Confrontation Clause.[61]   But the absence of cross-examination only causes constitutional concern when the testimonial equivalent is a crucial link adding critical weight to the case against the defendant.[62]   Here, the prosecutor's brief synopsis of Welch's testimony, described days before his refusal to testify was made known to the jury, did not have the critical weight that raises concerns under the Confrontation Clause because the substance of Welch's knowledge was cumulative of the evidence offered by other witnesses.[63]

The second constitutional concern arising from the challenged testimony relates to defendant's due process rights.   To the extent that the prosecution makes a "conscious and flagrant attempt to build its case out of inferences arising from the testimony privilege," the prosecutorial misconduct can deny the defendant a fair trial.[64]   The focus of this inquiry must be on the effect the alleged prosecutorial misconduct had on the trial, rather than the culpability of the prosecutor's conduct.[65]   For example, the Massachusetts Supreme Judicial Court rejected a similar claim of error when "the prosecutor only questioned the witness once, included no 'facts' in the form of leading questions, and made no comment about the witness' recalcitrance in his closing argument . . . ."[66]   Other states have focused on whether the prosecution "puts questions to the witness, which if not answered, would lead to the inference that the answers, if given, would be unfavorable to the defendant."[67]

Here, defendant argues that the prosecutor deliberately tried to make capital out of Lewis's and Welch's refusals to testify, by arguing that the jury could infer that both witnesses had been intimidated.   We disagree.   Neither Lewis nor Welch actually appeared before the jury.   Thus, the prosecutor could not have continued to ask unanswered questions from which negative inferences could be drawn. Although Lewis's preliminary examination testimony was admitted, the questions put to Lewis at the time were answered, minimizing the possibility that the jury would reach prejudicial inferences from Lewis's silence.

Admittedly, the prosecutor referred to witness tampering several times throughout her closing arguments.   But the vast majority of those references were directly tied to evidence properly admitted at trial, rather than inferences derived from witness silence.   The few times that the prosecutor relied on inferences of intimidation[68] were brief and of little significance when considered in conjunction with the overwhelming amount of direct evidence of intimidation.   Thus, there is no reason to believe that the prosecutor's limited references to witness silence during closing arguments deprived defendant of a fair trial.

[55] *People v Gearns*, 457 Mich 170, 180-182; 577 NW2d 422 (1998), overruled on other grounds by *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999).

[56] *Gearns*, 457 Mich at 187-188, quoting *Namet v United States*, 373 US 179, 186; 83 S Ct 1151; 10 L Ed 2d 278 (1963).

. . .

[58] See *id.* at 195.

[59] *People v Yost*, 278 Mich App 341, 370; 749 NW2d 753 (2008), quoting *People v Watson*, 245 Mich App 572, 584; 629 NW2d 411 (2001).

[60] *Davis v Washington*, 547 US 813, 833; 126 S Ct 2266; 165 L Ed 2d 224 (2006) (citation omitted).

[61] *Gearns*, 457 Mich at 181-184 (citation omitted).

[62] *Id.* at 181-182.

[63] See *Frazier v Cupp*, 394 US 731; 89 S Ct 1420; 22 L Ed 2d 684 (1969) (finding that the defendant was not denied his confrontation rights when prosecutor summarized witness testimony in opening arguments, did not question the witness further after privilege was asserted on the stand, and the statements were not vitally important to the prosecutor's case).

[64] *Gearns*, 457 Mich at 188, quoting *Namet*, 373 US at 186.

[65] *Gearns*, 457 Mich at 189.

[66] *Id.* at 191, citing *Commonwealth v Kane*, 388 Mass 128, 138; 445 NE2d 598 (1983) (footnote omitted).

[67] *Gearns*, 457 Mich 192, citing *Price v State*, 37 Wis2d 117; 154 NW2d 222 (1967).

[68] The prosecutor only relied on such inferences of intimidation twice in her closing arguments. First, she asked the jury to recall how many inmates refused to take the stand and then remarked that "[f]ear is a huge factor in this case." Later, she summarized Lewis's preliminary examination testimony and suggested that Lewis would not testify at trial because he was fearful of defendant. With respect to the later reference, the inference of intimidation could also be drawn from Lewis's admission at the preliminary examination that he was concerned for his safety.

*Wilkins*, 2017 WL 4158023, at *9-10.

## A. Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct by eliciting testimony from Detective Kubiak that both Welch and Lewis had been subpoenaed but refused to testify. He argues that, by introducing the testimony, the prosecutor committed misconduct. Petitioner also contends that the prosecutor committed misconduct in her opening statement to Welch's emotional response to the killing. Finally, he argues that the prosecutor committed misconduct by indicating in closing argument that Lewis was afraid to testify.

As earlier discussed, in order to be entitled to habeas relief on the basis of prosecutorial misconduct, a petitioner must show that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). In evaluating that question, a court must consider, in light of the overall proof of guilt at trial, the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, whether the claimed misconduct was deliberate or accidental, whether the conduct was objected to by counsel, whether a curative instruction was given by the court. *See Young*, 470 U.S. at 11-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47. "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith,* 455 U.S. at 219.

The United States Supreme Court has held that calling a witness, knowing that the witness would refuse to testify and invoke his Fifth Amendment right against self-incrimination, does not invariably rise to the level of prosecutorial misconduct. *Namet v. United States*, 373 U.S. 179, 187-89 (1963). Instead, a determination of prosecutorial misconduct requires analysis of the totality of the circumstances, including the extent to which the prosecutor attempted to create a case against the defendant by inferences and the significance of the testimony to the trial. *Id.*

The Michigan Court of Appeals clearly applied the constitutional standard, citing *Namet*. The court of appeals considered the significance of Kubiak's testimony that Lewis and Welch had been subpoenaed and refused to testify within the totality of the circumstances. As the court of appeals held, even assuming that the prosecutor erred in eliciting the evidence, that evidence was limited to Kubiak's brief statements to the effect that the witnesses had refused to testify. The prosecutor did not linger on the issue. Thus, the possibility of the jury making a

negative inference from the witnesses' non-appearance was small—far smaller than in circumstances such as those in *Namet*, where the witness, on the stand, refuses to testify. Moreover, as the court elsewhere noted, substantial evidence existed of both Petitioner's guilt and his attempts to interfere with the witnesses providing testimony at trial.  Under the circumstances, the court of appeals' rejection of Petitioner's claim did not constitute an unreasonable application of clearly established Supreme Court precedent.[6]

The court of appeals also reasonably concluded that the prosecutor's brief discussion, during opening statement, of Welch's expected testimony did not constitute prosecutorial misconduct.  Petitioner does not dispute the court of appeals' conclusion that the prosecutor's comments were unintentional, as she did not know that Welch would not appear at trial.  In addition, the information was of limited scope, was consistent with other evidence in the case, and was not the subject of a defense objection.  Again, in the context of the other evidence, the state court's finding that the prosecutor's opening statement did not amount to prosecutorial misconduct falls well short of an unreasonable application of clearly established Supreme Court precedent.

Finally, the prosecutor's indication during closing argument that Lewis was afraid to testify was supported by Lewis' preliminary-examination testimony, in which he stated that he was afraid.  Thus, the prosecutor's remarks were proper arguments from the evidence before the jury and therefore could not "mislead the jury."  *Young*, 470 U.S. at 11-12.  Under the

---

[6] Petitioner's claim of prosecutorial misconduct respecting the admission of Kubiak's testimony that Welch refused to testify fails for another reason.  Defense counsel made an objection to the admission of Kubiak's statement about Welch, but the trial court allowed the testimony to be admitted.  Ordinarily, a petitioner cannot demonstrate that a prosecutor committed misconduct by offering evidence that ultimately was admitted at trial.  "'A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings.'" *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (quoting *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008)); *see also Bales v. Bell*, 788 F.3d 568, 577 (6th Cir. 2015).

circumstances, Petitioner has not shown that the alleged misconduct met the doubly deferential standard applied to review of state-court determination on prosecutorial misconduct.  *Stewart*, 867 F.3d 633 (citing *Parker*, 567 U.S. at 48).

      **B.**    **Confrontation**

      Petitioner next argues that he was denied his right to confront witnesses by the introduction of Kubiak's testimony that both Lewis and Welch had refused to testify and by the prosecutor's remarks in her opening statement about Welch having cried when he talked about the victim's death.

      As discussed earlier in this opinion, the Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI; *Pointer*, 380 U.S. at 403-05 (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."  *Craig*, 497 U.S. at 845.  The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination.  *Crawford*, 541 U.S. at 59.

      The improper admission of evidence in violation of the Confrontation Clause is subject to harmless-error review under *Brecht v. Abrahamson*, 507 U.S. 619, 636 (1993).  *Stewart v. Trierweiler*, 867 F.3d 633 (6th Cir. 2017).  In § 2254 proceedings, a federal court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U. S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a

reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

### 1.    Summary of expected Welch testimony in opening statement

The Supreme Court has addressed on several occasions, in varying circumstances, when admission of evidence from a witness who refuses to testify implicates the Confrontation Clause.  In *Bruton v. United States*, 391 U.S. 123 (1968), the Court considered the admission of a codefendant's confession, after the codefendant invoked his Fifth Amendment rights.  The Court held that, even with an instruction that the confession only be used against the non-testifying codefendant, the admission of the evidence violated the other defendant's confrontation rights.  The Court reasoned that, under such circumstances, "the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135.

One year later, the Supreme Court decided *Frazier v. Cupp*, 394 U.S. 731 (1969).  In *Frazier*, the Court considered a circumstance closer to the one in issue in the instant case.  The *Frazier* case arose from a prosecutor's preview of the expected testimony of a codefendant, Mr. Rawls, who had already pleaded guilty and had given a confession.  After Rawls unexpectedly invoked his Fifth Amendment rights, Frazier argued that his confrontation rights were violated, because the prosecutor had placed the substance of the codefendant's testimony before the jury, without an opportunity for Frazier to conduct cross-examination.  While the Supreme Court suggested that a prosecutor's remarks during an opening or closing statement could violate the Confrontation Clause, if they included inadmissible evidence and were sufficiently harmful, the Court determined that Frazier's rights were not violated.  *See Frazier*, 394 U.S. at 736.  In reaching its decision, the Court relied on several facts that distinguished the case from *Bruton*:  the evidence was introduced in an attorney statement rather than a witness statement; the confession was never

33

read to the jury, but merely paraphrased; the account took only a few minutes and was not emphasized; only one defendant was on trial, which prevented the jury from having to "perform the mental gymnastics" required in *Bruton*; and "Rawls' testimony was not a vitally important part of the prosecution's case. The Court held that, under these circumstances, unlike those in *Bruton*, limiting instructions "were sufficient to protect [Frazier's] constitutional rights." *Id.* at 735.

In *Richardson v. Marsh*, 481 U.S. 200 (1987), the Court again considered the use of a non-testifying codefendant's confession at a joint trial. In *Marsh*, however, unlike in *Bruton*, the confession was redacted before being read to the jury. The redactions did not simply replace Marsh's name with some generic reference, but instead removed all reference to Marsh or her role in the crime. *Id.* at 203. Only when Marsh took the stand, testifying that she was in the car with the non-testifying codefendant, did the redacted confession suddenly have incriminating potential. The Supreme Court distinguished *Bruton*, concluding that, when a non-incriminating co-defendant's confession only becomes incriminating by later-introduced evidence, the jury is competent to follow instructions to consider the evidence only against the non-testifying codefendant. *Id.* at 208. However, that determination did not end the case. During closing arguments, the prosecutor asked the jury to do what the limiting instruction was meant to avoid—linking the confession and Marsh's testimony. The Court held that the prosecutor's comments were error. It therefore remanded for a determination of whether the prosecutor's comments could serve as a basis for relief. *Id.* at 211.

Thereafter, in *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court considered circumstances that fell between *Bruton* and *Richardson*. In *Gray*, the prosecution introduced a redacted confession of a codefendant, but the redaction was limited to leaving a blank space or the word "deleted" in space of the name. The Court held that, where a name is replaced

34

"with an obvious indication of deletion," *Bruton* applies and no limiting instruction will be sufficient to cure the violation. *Id.* at 192.

The instant case closely tracks *Frazier* and bears little similarity to *Bruton*, *Richardson*, and *Gray*. Indeed, the Michigan Court of Appeals recognized this similarity, expressly relying on *Frazier* in reaching its decision. Here, as in *Frazier*, the evidence came into the case during the prosecutor's opening statement as a preview of expected evidence, not through the introduction of Welch's statement. Moreover, as the court of appeals found, the prosecutor's statement was made days before the jury was informed that Welch would not testify at trial, the prosecutor's preview consisted of only a few sentences, and the prosecutor did not further emphasize Welch's purported testimony. Further, significant evidence supported the conviction, independent of the prosecutor's remarks about what Welch would have said. Under these circumstances, the Court concludes that the court of appeals' resolution of Petitioner's claim concerning the prosecutor's opening statement was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### 2.      Kubiak's testimony that Welch and Lewis refused to testify

Petitioner's claim that Kubiak's testimony that Welch and Lewis refused to testify violated the Confrontation Clause fares no better than his prior confrontation claim. In his current argument, Petitioner does not contend that Kubiak introduced any out-of-court statement by either Welch or Lewis.[7] Instead, Kubiak testified only that Welch and Lewis had been subpoenaed and refused to testify.

---

[7] The Court previously has determined that the state court's admission of Lewis' preliminary-examination testimony was not a confrontation error that would entitle Petitioner to habeas relief. Similarly, as just discussed, the Court already has concluded that the prosecutor's preview of Welch's expected testimony did not amount to a confrontation error entitling Petitioner to habeas relief.

35

The Supreme Court has rejected the notion that merely placing a witness on the stand, knowing that he will refuse to testify (by invoking the privilege against self-incrimination), invariably violates a defendant's right to confrontation. *See Namet*, 373 U.S. 179. The *Namet* Court recognized that, in some cases, "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 187. However, under the circumstances of the *Namet* case, the Court concluded that, by calling witnesses knowing that they would invoke their Fifth Amendment privilege, the prosecution did not deprive Petitioner of his right of confrontation. The Court recognized that generating improper inferences was not the only reason for placing the witnesses on the stand. The prosecutor had reason to doubt whether the invocation of privilege would be proper; the witnesses had other important trial testimony that was not privileged; and the invocations of privilege were of limited importance at trial.

The Michigan Court of Appeals expressly relied on *Namet* in addressing Petitioner's claim. Here, unlike in *Namet*, neither Welch's nor Lewis' refusals to testify were made on the witness stand. Instead, the witnesses completely refused to testify at trial, despite being subpoenaed. The circumstances of the instant case, therefore, had far less potential to encourage jurors to make improper inferences about Petitioner's guilt. While the prosecutor undoubtedly intended to explain why her witnesses were not going to testify, she did not suggest that an inference be made about Petitioner's guilt from those refusals to testify. Even assuming that Kubiak's testimony could be construed as a confrontation error, that error unquestionably was harmless. *See Brecht*, 507 U.S. at 636. Under clearly established Supreme Court precedent, Petitioner was not automatically deprived of his right of confrontation simply because a police detective mentioned that two witnesses refused to appear.

VI.    **Ground IX:  Prosecutorial Misconduct**

In his ninth habeas ground, Petitioner again complains of prosecutorial misconduct. This time, however, Petitioner simply lists the alleged incidences of prosecutorial misconduct that he described in Grounds IV and V.  He contends that, when considered together, the various examples of prosecutorial misconduct amounted to a due process violation.[8]

In deciding whether a Petitioner has demonstrated prosecutorial misconduct sufficient to violate due process, the Court must consider the seriousness of any errors collectively. *See, e.g., Kyles v. Whitley*, 514 U.S. 419 (1995) (evidence suppressed in violation of *Brady* should be considered collectively); *see also United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) ("[E]xamining an ineffective assistance of counsel claim requires the court to consider 'the combined effect of all acts of counsel found to be constitutionally deficient, in light of the totality of the evidence in the case.'" (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)).

In the instant case, however, the Court found that the majority of Petitioner's allegations of prosecutorial misconduct were not supported by the evidence.  To the extent that the Court assumed arguable errors—the elicitation of Kubiak's testimony that both Lewis and Welch refused to testify, the introductory summary of Welch's testimony, and the brief statement in closing that Lewis was telling the truth—the Court found that such errors were slight in the context of the evidence before the jury.  Even viewed collectively, Petitioner's claims fall well short of

---

[8] The Court notes that, in the Michigan Court of Appeals, Petitioner raised additional claims of prosecutorial misconduct:  (1) the prosecutor committed misconduct by presenting incredible witnesses; (2) the prosecutor engaged in prejudicial misconduct by repeatedly using the term "murder" during trial, rather than the term "shooting"; and (3) the prosecutor interjected information, by questioning witness Ford whether Petitioner had used the term "popped the person." *Wilkins*, 2017 WL 4158023, at *8.  The court of appeals, applying the appropriate federal standard, found no prosecutorial misconduct.  Petitioner does not raise these three prosecutorial-misconduct claims in his habeas corpus petition.  Accordingly, the are not properly before the Court.  Nevertheless, the Court has reviewed the state court's thorough resolution of the claims and finds no error, much less constitutional error under the double deference owed the state-court determination. *Parker*, 567 U.S. at 47.

demonstrating that the prosecutor's errors "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation omitted).

## VII.    Grounds VI & X:  Jury Instructions

In Ground VI of his habeas application, Petitioner argues that the trial court committed legal error and abused its discretion in failing to instruct the jury on the lesser-included offense of manslaughter.  He contends that, by not giving such an instruction, the court deprived him of due process and denied him his right to present a complete defense.  In Ground X, Petitioner argues that the trial court issued a defective instruction about how the jury should complete the verdict form, which, he asserts, deprived him of his right to have his case decided by a jury. Petitioner asserts that the court's defective instruction amounts to structural error that entitles him to habeas relief without consideration of whether the error was harmless.

Typically, a claim that a trial court gave an improper jury instruction or refused to give a requested instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders*, 221 F.3d at 860.  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*

### A.   Lesser-included offense

The Sixth Circuit Court of Appeals, sitting en banc, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack." *Bagby v. Sowders*, 894

38

F.2d 792, 797 (6th Cir. 1990) (en banc). The *Bagby* Court held that failure to instruct on lesser-included offenses in a noncapital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure. *Id.*; *accord Tegeler v. Renico*, 253 F. App'x 521, 524 (6th Cir. 2007); *Todd v. Stegal*, 40 F. App'x 25, 28-29 (6th Cir. 2002); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Samu v. Elo*, 14 F. App'x 477, 479 (6th Cir. 2001); *Williams v. Hofbauer*, 3 F. App'x 456, 458 (6th Cir. 2001). Consequently, Petitioner's claim that there was constitutional error in the trial court's failure to *sua sponte* instruct on lesser included-offenses is without merit.

Moreover, even if the constitution entitled a defendant to an instruction on an appropriate lesser-included offense, such an instruction would not be appropriate here. After first recognizing that Petitioner's claim was defaulted for lack of a contemporaneous objection, the Michigan Court of Appeals outlined what was required to support an instruction on voluntary manslaughter and held that the evidence at trial did not support such an instruction:

> "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him."[79] "Jury instructions must clearly present the case and the applicable law to the jury," including "all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence."[80] A defendant charged with murder is entitled to have the jury instructed regarding the lesser included offense of voluntary manslaughter if supported by a rational view of the evidence.[81] To justify a voluntary manslaughter instruction, there must be evidence that "(1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions."[82] The adequacy of provocation is measured under an objective, reasonable-person standard.[83] Whether provocation is reasonable is typically a question of fact for the jury, but the court may refuse to issue a voluntary manslaughter instruction if, as a matter of law, "no reasonable jury could find that the provocation was adequate."[84]
>
> Defense counsel requested a voluntary manslaughter instruction because York testified that Walker "threw a little punch" at defendant before running from the bus stop. On appeal, defendant also argues that the instruction was warranted because there was evidence that he was "jumped" by Walker. We disagree.

According to York, defendant was waiting at the bus stop, armed with a gun, for the express purpose of confronting Walker. Walker unsuccessfully tried to hit defendant only after seeing him approaching at a fast pace. Moreover, immediately after this single attempt to strike defendant, Walker tried to run away. A reasonable person would not be so provoked by an unsuccessful swing that he would be compelled by passion to chase and kill the fleeing "aggressor." Likewise, the mere fact that Walker may have fought with defendant at some unknown time in the past does not suggest that defendant was acting in the heat of passion when he shot Walker. Because no reasonable jury could have found that these minor instances of provocation were sufficient to negate the presence of malice, the trial court did not err by rejecting defendant's request for a voluntary manslaughter instruction.

[79] *Id.* at 420-421 (citation omitted).

[80] *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

[81] *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003).

[82] *People v Tierney*, 266 Mich App 687, 714; 703 NW2d 204 (2005).

[83] *People v Mitchell*, 301 Mich App 282, 286-287; 835 NW2d 615 (2013).

[84] *Tierney*, 266 Mich App at 715 (citation omitted).

*Wilkins*, 2017 WL 4158023, at *12.

Petitioner completely fails to challenge the presumptively correct recitation of the evidence described by the court of appeals, *Shimel*, 838 F.3d at 688, and those facts therefore are accepted as true. Moreover, the state court's conclusion that the evidence was insufficient to support a voluntary-manslaughter instruction under state law is binding on this Court. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76); *see also Thomas*, 898 F.3d at 700 n.1 (same).

Even were the Court permitted to evaluate whether Petitioner was entitled to a voluntary manslaughter instruction, the undisputed facts recited in the court of appeals' denial of his claim and in the introduction to the court of appeals' decision demonstrate that Petitioner was

not reasonably provoked and acting in the heat of passion:  he was waiting for Walker with gun, intending to confront him with the gun, and that Walker only swung at Petitioner after perceiving that threat.  Moreover, Walker immediately ran away, and Petitioner shot Walker while he was running.  Under these circumstances, Petitioner cannot show that the state court's finding that Petitioner was not entitled to an instruction on voluntary manslaughter was erroneous, much less that the failure to give the instruction so infected the trial as to deprive Petitioner of due process. *Henderson*, 431 U.S. at 155.

For all these reasons, Petitioner is not entitled to habeas relief on his sixth habeas ground.

### B.    Instruction about verdict form

Petitioner argues in his tenth habeas ground that the court's instruction about completing the jury form was confusing and improper, thereby depriving Petitioner of his right to a fair trial.  After first recognizing that the issue was procedurally barred, the Michigan Court of Appeals concluded that Petitioner's claim about the jury instruction did not warrant relief:

> Defendant also takes issue with the trial court's instruction regarding the possible verdicts the jury could return for the murder charge.  In pertinent part, the verdict form read as follows:
>
>> We, the jury, in the above-entitled cause, all 12 jurors being in agreement, find upon our oaths that the defendant, NAJEE SHARIF WILKINS, is:
>>
>> Count 1
>>
>> ☐ Guilty of First Degree Premeditated Murder
>>
>> ☐ Not Guilty.
>>
>> If you find the defendant not guilty of Count 1 or cannot agree, then you may consider the lesser included offense of Second Degree Murder.
>>
>> Count 2
>>
>> ☐ Guilty of Second Degree Murder

□ Not Guilty.

After identifying the form and the first count, the court explained,

> [Y]ou need to follow the instructions underneath that. If you find the defendant not guilty of count one, or you cannot agree on count one, then you must -- you may consider the lesser included offense of second degree. In other words, you need to follow my instructions here. You cannot find the defendant -- you can find him not guilty of both, but you cannot find him guilty of both those. One or the other.

> Defendant argues that this instruction was "incredibly confusing" and suggested that the jury was prohibited from acquitting him of both offenses. We see no merit in defendant's view of the above-quoted instruction. The court clearly indicated that the jury was free to "find [defendant] not guilty of both" alternative counts.[] Thus, the trial court did not err with respect to this instruction and defendant is not entitled to relief on that basis.

(*Wilkins*, 2017 WL 4158023, at *13.)

The Supreme Court repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009); *Henderson*, 431 U.S. at 152; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Levingston v. Warden*, 891 F.3d 251, 255 (6th Cir. 2018). "[T]he category of infractions that violate 'fundamental fairness'" has been defined "very narrowly." *Dowling*, 493 U.S. at 352.

The instant instruction falls far short of that narrow category of errors that violates due process. Contrary to Petitioner's representations, the court did not encourage the jury to believe that they had to convict Petitioner of either first-degree or second-degree murder. The court clearly informed the jury that it could find Petitioner not guilty of both offenses. The state court's rejection of Petitioner's tenth habeas ground was neither contrary to nor an unreasonable application of Supreme Court precedent.

## VIII.   Grounds VII & XI:  Sentencing Issues

Petitioner makes a variety of arguments in his seventh habeas ground. First, he asserts that, because he was a juvenile at the time of the offense, imposition of a 45-year minimum

sentence violated the Eighth Amendment concepts laid down in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).  Second, Petitioner complains that his sentence was disproportionate and unreasonable—grossly exceeding the guidelines minimum sentencing range of 22 to 37½ years, in violation of the Eighth Amendment.  Third, he argues that his 45- to 100-year sentence was imposed in violation of the Sixth and Fourteenth Amendments, because it was based on facts decided by the judge, not the jury.  Fourth, in Ground XI, Petitioner contends that the trial court abused its discretion in calculating the guidelines and in departing upward from those guidelines, and he suggests that the court's findings violate his right to due process.[9]  The Court will address each of Petitioner's claims, albeit not in the same order.

## A.  Judicial factfinding

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.  Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under

---

[9] Petitioner also argues in Ground XI that his trial attorney was ineffective in failing to object to the calculations and the ultimate sentence.  Petitioner raises the same argument as one of four claims presented in his twelfth habeas ground.  The Court will address all of Petitioner's ineffective-assistance claims together when addressing Ground XII.

which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held

that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule

that any fact that increases the maximum sentence must be "admitted by the defendant or proved

to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at

303).

Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of

cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502

(Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing

guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-

finding beyond facts admitted by the defendant or found by the jury to score offense variables []

that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870

N.W.2d at 506 (emphasis in original).  The Court's remedy for the unconstitutionality of the

Michigan guidelines was to sever and strike the mandatory component of the guidelines and make

the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that

the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever

only the mandatory component, still requiring courts to consider the guidelines, but making them

advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis.

*Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018).  The *Robinson* court held that the Supreme

Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing

scheme was unconstitutional.  *Robinson*, 901 F.3d at 714.  The court reasoned that, "[]a]t bottom,

Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to

increase mandatory minimum sentences.  *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

In the instant case, Petitioner was sentenced in 2016, nearly three years after the Supreme Court decided *Alleyne*.  *Alleyne* therefore was clearly established at the time of Petitioner's sentence.  However, as the Michigan Court of Appeals recognized, Petitioner also was sentenced eight months after *Lockridge* was decided.  As a result, at the time Petitioner was sentenced, the sentencing guidelines no longer were mandatory, but advisory only.

As the Supreme Court repeatedly has recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment.  *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Reign v. Gidley*, 929 F.3d 777,  781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.")   "Consideration of the Michigan sentencing guidelines minimum range was entirely discretionary at the time the trial court sentenced Petitioner. Moreover, the judge ignored the advisory guidelines when he exercised his discretion to depart upward, setting Petitioner's minimum sentence outside of the minimum range provided by the guidelines.  The sentence, therefore, was neither contrary to, nor an unreasonable application of, *Alleyne*.

B.      **Application of Sentencing Guidelines & Due Process**

Petitioner argues that the state court misapplied the sentencing guidelines and departed from those guidelines for an improper reason.  He suggests that the court violated state law and the Due Process Clause of the Fourteenth Amendment.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings.  *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner also fails to demonstrate a due process violation arising out of the court's calculation of the guidelines and decision to depart.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980; *see also Tucker,* 404 U.S. at 447; *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th

Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information.  He therefore fails to demonstrate that his sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

### C.      Disproportionality & Reasonableness:  State Law & Eighth Amendment

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), or unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), he fails to raise a cognizable habeas claim.  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  Nearly three decades later, in *Steanhouse*, Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion.  *Steanhouse*, 902 N.W.2d at 335.  The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis.  *Id.*  In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.  Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts.  *Id.*  It is plain that *Milbourn*, and thus *Steanhouse*, were decided under

state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.  Thus, Petitioner's claim based on *Milbourn* and *Steanhouse* is not cognizable in a habeas corpus action.

Moreover, Petitioner's claim that his sentence was disproportionate under the Eighth Amendment is without merit.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Further, the *Miller* decision does not alter the Eighth Amendment calculus.  In *Miller*, 567 U.S. 460, the Supreme Court held that the Eighth Amendment prohibits a sentencing scheme that mandates life in prison without parole for juvenile offenders, concluding that such a scheme creates an unreasonable possibility of a disproportionate sentence.  *Id.* at 479.  The Court reiterated its prior recognition that "children are constitutionally different from adults for sentencing purposes."  *Id.* at 471.  The Court highlighted children's "'lack of maturity,'" "'underdeveloped sense of responsibility,'" "'vulnerab[ity] . . . to negative influences and outside pressures,'" and that they "lack the ability to extricate themselves from horrific, crime-producing settings."  *Id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005) (holding that a person under 18 at the time of the crime may not be executed)).  In addition, the *Miller* Court repeated that, "because a child's character is not as 'well formed' as an adult's, his traits are 'less fixed' and his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity].'"  *Id.* (quoting *Roper*, 543 U.S. at 570).  The Court therefore instructed that, before sentencing a person who was a juvenile at the time of the offense to life imprisonment without parole, the sentencing court must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  *Id.* at 480.  Subsequently, in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court held that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review.  *Id.* at 735-36.

Although a court may conclude that the considerations raised in *Miller* are relevant to a court's discretionary imposition of a lesser sentence on a juvenile, *Miller* does not mandate those considerations and does not clearly establish that the Eighth Amendment bars a sentence of

45 to 100 years' imprisonment on a juvenile who was 17 at the time of the offense. *See Atkins v. Crowell*, 945 F.3d 476, 478 (6th Cir. 2019).  Both before and after *Miller*, proportionality review under the Eighth Amendment is limited to cases involving a sentence of death or life imprisonment without parole.

## IX.    Ground VIII:  Sufficiency of the Evidence

Petitioner argues that the evidence was insufficient to support his conviction, because much of the evidence was constitutionally infirm or inadmissible, because he was denied his rights to confrontation, because of prosecutorial misconduct, and as the result of defective jury instructions.

To the extent that Petitioner argues that the prosecution introduced insufficient, competent evidence to support his conviction, his claim is meritless.  A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The facts recited by the state court, which must be presumed true by this Court, amply support the jury's verdict of second-degree murder.  Second-degree murder requires the following elements:  (1) a death; (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998).  "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 299 N.W.2d 304, 326 (Mich.1980)).

Petitioner does not seriously dispute the evidence recited by the Michigan Court of Appeals, which includes testimony from Dareyon York, who described Petitioner waiting at the bus stop and chasing after the victim, shooting his .22 caliber handgun at the victim.  York did not see the victim fall to the ground, but he testified that Petitioner was upset and stated repeatedly that the victim had fallen.  Cell phone records corroborated York's description of events.  Arthur Brown, who was not a member of either gang, also corroborated York's testimony.  Brown testified that he saw the two people chasing Walker, both carrying guns, and he recognized both of the pursuers.  He also testified that both men were carrying guns, but only Petitioner fired.  Brown

further testified that he had spoken to Petitioner later, and Petitioner told Brown that "he just had a beef with the young man," that "he did what he had to do," and that he "laid [Walker] down." *Wilkins*, 2017 WL 4158023, at *2.  The evidence indicated that a feud was ongoing between the two rival gangs, of which Petitioner and the victim were respective members.  Other witnesses reported conversations with Petitioner in which he tacitly admitted responsibility for the victim's death.  In addition, the prosecutor presented evidence, including recordings and letters of Petitioner himself, involving threats made to several witnesses by Petitioner and his brother.  Taken together, the evidence was more than sufficient to support a rational jury's conclusion that the evidence supported all elements of second-degree murder.

Petitioner argues, however, that unexplained portions of this evidence were constitutionally infirm or inadmissible.  By this argument, Petitioner appears to suggest that the prosecutor's witnesses should not be believed.  As the court of appeals recognized, such challenges to the credibility of witnesses, are for the jury.  Indeed, as earlier discussed, a court sitting on habeas review may not consider questions of credibility.  *Herrera*, 506 U.S. at 401-02.  Petitioner provides nothing more than his conclusory statement about the infirmity of witness testimony.  He utterly fails to overcome the double deference owed the state court's denial of his claim.

The remainder of Petitioner's arguments about the sufficiency of the evidence appear to be simple restatements of his claims that he was denied the right to confrontation, was subjected to prosecutorial misconduct, and received constitutionally inadequate jury instructions.  The Court previously rejected those claims.  Petitioner's argument appears to be an attempt to cumulate those alleged errors to create a constitutional issue.

Under the AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law.  *Bailey*, 271 F.3d at 655.  The Sixth Circuit repeatedly has stated that

cumulative-error claims are not cognizable on habeas review. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004); *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Moreover, because the Court has concluded above that the individual claims are without merit, Petitioner cannot show that the cumulative error violated his constitutional rights. *See Seymour*, 224 F.3d at 557.

　　　　For all these reasons, Petitioner is not entitled to relief on his eighth habeas ground.

## X.　　Ineffective Assistance of Trial Counsel:  Grounds XI & XII

　　　　In Ground XII of his habeas application, Petitioner argues that he was denied the effective assistance of counsel in four specific ways:  (1) counsel failed to call Marquis Thomas as a witness at trial; (2) counsel failed to object to the prosecutor's allegedly improper remarks; (3) counsel failed to object to the court's confusing jury instructions; and (4) counsel failed to object to the errors in the trial court's calculation of the sentencing guidelines.  In conjunction with the first of these claims of attorney error, Petitioner seeks an evidentiary hearing (ECF No. 5) and the appointment of an attorney (ECF No. 6) in this Court.  In Ground XI, Petitioner specifically alleges ineffective assistance of counsel relating to the scoring of his sentencing guidelines, the fourth claim of ineffective assistance raised in Ground XII.

　　　　In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

53

*Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.   The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.   *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).   The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.   Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.   *Id.* at 691.[10]

As the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.   *Harrington*, 562 U.S. at 105 (citing *Knowles*, 556 U.S. at 123); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).   In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has

---

[10] Petitioner argues that his claims of attorney error should not be analyzed under the *Strickland* standard, but instead under the standard set forth in *United States v. Cronic*, 466 U.S. 648 (1984).   In *Cronic*, the Supreme Court recognized that, "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding[,]" a court must presume prejudice.   *Id.* at 659 n.25.   Only three types of cases warrant the presumption of prejudice:   (1) when the accused is denied the presence of counsel at a critical stage; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance.   *Henness v. Bagley*, 644 F.3d 308, 323-24 (6th Cir. 2011) (citing *Bell v, Cone*, 535 U.S. 685, 695-96 (2002)).   Petitioner utterly fails to demonstrate that he was denied the presence of counsel at any point in the proceedings, that his attorney entirely failed to represent him, or his attorney was prevented by circumstances from representing him.   Instead, he challenges ordinary attorney error and routine failures to object.   Such claims are analyzed under *Strickland*.

recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals recited the applicable federal standard and expressly invoked *Strickland*. Applying that standard, the court summarily denied the claims regarding counsel's failure to object to the prosecutor's remarks, the allegedly confusing jury instructions, and the improper scoring of the guidelines. The court held that, because the underlying claims lacked merit or did not prejudice Petitioner, Petitioner could not demonstrate either that counsel's failures to object were objectively unreasonable or that they had an effect on the judgment.

The court of appeals' decision on these claims was patently reasonable. This Court previously agreed with the state court that the underlying claims about prosecutorial misconduct, instructional error, and guidelines scoring were meritless and/or noncognizable in this proceeding. To the extent that this Court concluded that Petitioner's claims about the jury instructions and guidelines scoring were noncognizable, state-court determinations, the court of appeals' findings that the grounds were meritless under state law are binding on this Court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Bradshaw*, 546 U.S. at 76. Because the court of appeals found no error in those claims, any objection would have been futile. An attorney's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."); *Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

Moreover, because this Court has found no error in the state court's resolution of Petitioner's constitutional prosecutorial-misconduct claims and/or has concluded that any prosecutorial misconduct was not prejudicial, Petitioner cannot show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner therefore cannot demonstrate that he was prejudiced by his attorney's failure to object.

Petitioner's remaining claim of ineffective assistance of counsel requires a more detailed analysis. In that claim, Petitioner contends that Marquis Thomas, a prisoner at the Gus Harrison Correctional Facility (ARF) from February 2014 through at least January 16, 2015, sent a letter to the Kent County Prosecutor on January 16, 2015. In the letter, Thomas stated that David Christian and Juwaan Haasan also were housed at ARF. Christian and Hassen allegedly told Thomas that they had lied to the police and that they were involved in the plan to shoot and rob Walker when Walker came to the park to buy drugs. They stated that they had framed an innocent man. (Thomas Letter, ECF No. 4-1, PageID.130-31.) In an affidavit signed on December 19, 2016, Thomas states that, after writing the letter to the prosecutor, he does not remember being interviewed by the police or asked to testify for Petitioner. Thomas states that he learned on December 13, 2016, that Petitioner had been convicted. He therefore prepared an affidavit on December 19. 2016, because he believed that Petitioner was innocent of the offense. Petitioner filed his Standard 4 brief on appeal, in which he raised the issue, and he simultaneously filed a motion to remand the case for an evidentiary hearing. The court of appeals denied the motion to remand on March 20, 2017.

In reviewing the claim, the Michigan Court of Appeals made the following determinations:

Defendant argues that he was denied the effective assistance of counsel because his trial attorney failed to call Marquis Thomas as a defense witness. According to defendant, Thomas would have testified that David Christian admitted shooting Walker after luring him to the park with the intention of robbing him. However, defendant failed to support this claim of error with evidence contained in the lower court record. Instead, defendant attached a letter written by Thomas before defendant's trial and a later affidavit attesting to the same facts. Pursuant to MCR 7.210(A)(1), the record on appeal consists of "the original papers filed in [the lower] court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." Thus, defendant's reliance on Thomas's letter and affidavit is misplaced, as it constitutes an improper attempt to expand the record on appeal beyond the information presented in the lower court.

Furthermore, even if this Court were to consider Thomas's letter and affidavit, defendant still failed to establish the factual predicate for his claim. Generally, "[d]ecisions regarding whether to call or question witnesses are presumed to be matters of trial strategy."[118] In the absence of a *Ginther* hearing, defense counsel's reasons for declining to call Thomas as a witness are unclear. Nonetheless, we have no difficulty concluding that counsel's decision was objectively reasonable and consistent with sound trial strategy. Thomas's second-hand explanation of David's alleged admission was contradicted by the eyewitness testimony offered by York and Brown. It was also undermined by the numerous witnesses who heard defendant take responsibility for the same shooting. Additionally, because Thomas's only knowledge concerning the incident was based upon his jailhouse conversation with David, it is improbable that the jury would find Thomas's contradictory testimony more credible than the evidence offered by witnesses who had first-hand knowledge concerning the shooting or the ongoing feud leading up to Walker's death.

[118] *People v. Russell*, 297 Mich. App. 707, 716; 825 N.W.2d 623 (2012).

*Wilkins*, 2017 WL 4158023, at *17.

Petitioner contends that, by denying his request for an evidentiary hearing, the court of appeals prevented him from developing the trial-court record that would have supported his claim. He asks this Court to hold an evidentiary hearing.

The ability of a habeas corpus petitioner to introduce new evidence in support of his habeas corpus petition is significantly circumscribed by the AEDPA. The Supreme Court has underscored the fundamental policy of AEDPA to "strongly discourage" petitioners from submitting new evidence in support of their request for relief in federal court. *Pinholster*, 563 U.S.

at 185-86.  Except in those circumstances allowed by 28 U.S.C. § 2254(e)(2), habeas corpus review

is limited to the record that was before the state court.  563 U.S. at 185-86.

Under 28 U.S.C. 2254(e)(2), if an applicant has failed to develop a record in state

court, a federal court on habeas review may grant a hearing only when the petitioner can

demonstrate both of the following:

    (A)    the claim relies on

           (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

           (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and

    (B)    the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.*  Moreover, where the issue was adjudicated on the merits in the state court proceedings, the

Supreme Court has held that federal habeas corpus "review under § 2254(d)(1) is limited to the

record that was before the state court . . . ." *Pinholster*, 563 U.S. at 185.  In such circumstances, a

federal habeas court is barred from holding an evidentiary hearing.  *Id.*

Petitioner argues that the court of appeals should not be considered to have decided

the issue on the merits, because Petitioner was denied an evidentiary hearing on the effectiveness

of counsel.  In *Ballinger v. Prelesnik*, 709 F.3d 558, 562-63 (6th Cir. 2013), the Sixth Circuit

applied *Pinholster* to the appellant's ineffective-assistance-of-counsel claim, despite the fact that

highly relevant documents were absent from the record before the state court and the state court

denied an evidentiary hearing.  The court held that the question under *Pinholster* was whether the

state adjudicated the claim on the merits.  The court concluded that, although the state court's

decision was brief, the court, under *Harrington*, 562 U.S. at 784, was required to presume the

clearly raised issue was decided on the merits.  Applying both *Pinholster* and *Harrington*, the *Ballinger* court concluded that the federal court was not permitted to take new evidence. *Ballinger*, 709 F.3d at 561.  The court held that, "[w]hile allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* precludes it."  *Id.* at 562 (citing *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011)).

In the instant case, the Michigan Court of Appeals unquestionably decided the issue both on procedural grounds and on the merits.  As *Ballinger* makes clear, the Supreme Court does not permit this Court to hold an evidentiary hearing under these circumstances.  709 F.3d at 561-62.  Accordingly, the Court will deny Petitioner's motion for an evidentiary hearing.  In reviewing Petitioner's claim, the Court is limited to the record before the state courts.

Relying on the presumption that counsel's decision was based on reasonable trial strategy, *see Strickland*, 466 U.S. at 689, the Michigan Court of Appeals held that counsel reasonably could have concluded that Thomas' testimony—which consisted of nothing more than second-hand information that conflicted with the testimony of other witnesses and Petitioner's own past statements—would not have been persuasive at trial.  The court further held that Petitioner failed to demonstrate prejudice, because, given the same limited value of Thomas' evidence and the presence of substantial conflicting evidence, it was improbable that a jury would have believed Thomas.

The state court's determinations on both prongs of the *Strickland* analysis constituted reasonable applications of clearly established Supreme Court precedent.  Petitioner fails to overcome the double deference owed to those determinations. *Harrington*, 562 U.S. at

105.  Accordingly, he is not entitled to either an evidentiary hearing or relief on his final claim of ineffective assistance of counsel.

## XI.      Pending Motions

As discussed, Petitioner's motion for an evidentiary hearing (ECF No. 5) will be denied, as this Court is without authority to grant such motion where, as here, the state court has denied Petitioner's ineffective-assistance-of-counsel claim on the merits.

Also pending is Petitioner's motion to appoint counsel (ECF No. 6).  As Petitioner recognizes, indigent habeas petitioners have no constitutional right to a court-appointed attorney. *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Barker v. Ohio*, 330 F.2d 594, 594-95 (6th Cir. 1964); *see also Lovado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court is required by rule to appoint an attorney only if an evidentiary hearing is necessary or if the interest of justice so requires.  Rule 8(c), Rules Governing Section 2254 Cases.  Prior to reaching its decision on the merits, the Court considered both the complexity of the issues and Petitioner's evident ability to present his claims.  The assistance of counsel was not necessary to the proper presentation of Petitioner's petition.  Petitioner's motion for a court-appointed attorney will therefore be denied.

## XII.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.

Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. However, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   June 25, 2020                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge